[S. F. No. 13189. In Bank.—April 29, 1929.]

UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Petitioner, v. DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF INDUSTRIAL ACCIDENTS AND SAFETY, and WILLIAM HARDY, Respondents.

Horace W. B. Smith and P. R. Lund for Petitioner.

G. C. Faulkner for Respondents.

CURTIS, J.—This proceeding was instituted for the purpose of having reviewed and annulled a certain order made by the Department of Industrial Relations, Division of Industrial Accidents and Safety. By section 364b of the Political Code, as amended in 1927 (Stats. 1927, p. 734, sec. 3), the Department of Industrial Relations has succeeded to all the powers vested in the Industrial Accident Commission by the Workmen's Compensation, Insurance and Safety Act of 1917 (Stats. 1917, p. 831), and acts amendatory thereof. On November 19, 1923, the respondent William Hardy was injured while in the employ of Gibbons & Reed, contractors. At the time Hardy received his injury the petitioner, the United States Fidelity and Guaranty Company, was the insurer of Gibbons & Reed against liability for compensation under the terms of the Workmen's Compensation, Insurance and Safety Act, enacted in 1917.

Petitioner without writing for any action on the part of the Industrial Accident Commission paid for all medical, surgical and hospital treatment, including nursing required to cure and relieve Hardy for a period of 240 weeks, or up to and including June 19, 1928, and in addition thereto paid to him the sum of $14.82 per week for 240 weeks, and thereafter $9.12 per week. On the tenth day of July, 1928, after a hearing before the Department of Industrial Relations, Division of Industrial Accidents and Safety, an award was made in favor of Hardy and against petitioner "of the sum of $14.82 a week, beginning November 27, 1923, and continuing for 240 weeks, and thereafter a life pension at the rate of $9.12 a week." In this award the petitioner was given credit against said award for all payments previously made by it on account of Hardy's disability. There is no objection or complaint made by petitioner to any of the terms of that portion of the award above set out as the department found, and it is admitted by the petitioner, that Hardy's injury produced total permanent disability. The department, however, as a part of said award made the further order as follows: "It is ordered that defendant insurance carrier furnish to employee the medical, surgical and hospital treatment, including nursing, as may be reasonably required to cure

and relieve him from the effects of said injury.'' It is conceded that this award for medical and hospital treatment was intended to cover not only the treatment furnished Hardy during the 240 weeks' period, immediately following his injury, and which the petitioner had paid for in full, but its intent and purpose was to provide for such treatment beyond said 240 weeks' period, and was designed to require petitioner to furnish Hardy medical, surgical and hospital treatment, including nursing, so long as the same may be required to cure and relieve Hardy from the effects of his present injury and after said injury had been declared permanent. ▮ As stated by petitioner in its points and authorities filed herein, ''The issue in this case is the power or jurisdiction of the said Department of Industrial Relations, Division of Industrial Accidents and Safety, to make the award of July 10, 1928, ordering that the petitioner herein furnish the employee (Hardy) the medical, surgical and hospital treatment, including nursing, as may be reasonably required to cure and relieve him from the effects of said injury.'' This identical question was before this court in two prior proceedings in which the petitioner herein was also the petitioner. The first of said proceedings was entitled, *United States Fidelity and Guaranty Co.* v. *Industrial Acc. Com.,* S. F. No. 12102, and was referred to as the Blankenhorn case. In that proceeding the petition was denied without any written opinion. The same question was again raised by the same petitioner in a second petition in the Blankenhorn case, being numbered S. F. No. 12404. This petition was also denied as was also a motion for a rehearing, but no written opinion was filed on either occasion. Upon the filing of the present petition while the same question is raised as was presented in said prior proceedings, we deemed it best to grant an alternative writ, and after argument and consideration of the case, to file a written opinion expressing the views of this court upon the question involved, which apparently may be one of frequent recurrence.

Before proceeding to the decision of the main question in the case, it might be well to state that the injury to Hardy having been sustained on November 19, 1923, the 240 weeks' period, beyond which payments for temporary dis-

ability could not be extended (sec. 9 of said act), expired on June 19, 1928, and the 245 weeks' period, after which no award of compensation can be rescinded, altered or amended (sec. 20 [d] of said act), expired on August 3, 1928. The award of July 10, 1928, was, therefore, made after the department had determined that the injury to Hardy had produced total permanent disability, but within the 245 weeks' period in which an award for total disability might be made. There can be no question, in so far as the time limit is material to the validity of said order, that the department acted within time and had jurisdiction to make said order or award.

This brings us to petitioner's principal contention that the department is without the power or jurisdiction to make an award for medical, hospital or surgical treatment, after it has determined that the injury to the employee has produced total permanent disability. Section 9 (a) of the Workmen's Compensation Act provides that the employer shall furnish to the injured employee "such medical, surgical and hospital treatment, including nursing, medicine, medical and surgical supplies, crutches and apparatus, including artificial members, as may reasonably be required to cure and relieve from the effects of the injury." This duty of the employer to furnish to his injured employee medical treatment has undergone various changes since the enactment of the original Workmen's Compensation Act of 1913 (Stats. 1913, p. 279). In that act this obligation was limited to such medical treatment as might be reasonably required at the time of the injury "and within ninety days thereafter to cure and relieve him from the effects of the injury." In the amendment of 1915 (Stats. 1915, p. 1082, sec. 4), the Industrial Accident Commission was given the power to extend this period of ninety days in which the employer was required to furnish medical treatment. In *Union Iron Works* v. *Industrial Acc. Com.*, 190 Cal. 33, 47 [210 Pac. 410], it was held that without making any formal order of extension where the employer refused to furnish the required medical treatment, the commission under this amendment was empowered to make an award for such medical treatment to be furnished to the injured employee by a physician of his own selection over four years after the date of the injury, and that such

award could be made at any time after the services were rendered and within 245 weeks after the date of injury. In 1917 the act was again amended to read as we have quoted it above. From its provisions it will be noted that the right of the employee to receive and the liability of the employer to furnish medical treatment is not expressly limited to 240 weeks nor is this right or liability expressly limited to any period whatever. The only limitation which petitioner contends is to be found in the act as now in force is that implied in the words "as reasonably may be required to cure and relieve from the effects of the injury." Petitioner insists that these words just quoted plainly express a purpose and intent to limit medical treatment to those cases only in which the condition of the injured employee is not permanent and, therefore, which may be cured and relieved from the effects of the injury by medical treatment. Petitioner contends that a physical condition which has become permanent is a condition which is changeless, and consequently the condition could neither be cured nor relieved by medical treatment. In support of this contention petitioner relies upon orders of this court denying a petition for review, and for rehearing, in a proceeding referred to as the "Elmore case," and entitled *Employers' Liability Assur. Corp.* v. *Elmore,* 4 I. A. C. 359. In that proceeding the commission refused to order the employer to furnish medical treatment for an injured employee on the ground that the medical treatment provided for in section 15 of the Workmen's Compensation Act, as amended in 1915, "did not include treatment for a disabled condition such as had become definitely permanent and would not, as a result of such treatment, be cured or improved." Whatever force or effect might have been given to the orders of this court denying a petition for a review and a petition for a rehearing in the Elmore case at one time has been completely overcome and nullified by the more recent consideration and determination given by this court to the various petitions before us in the Blankenhorn case, which have already been referred to. It is evident from the action taken by this court upon the hearing of these different petitions in the Blankenhorn case that we were not in accord with the conclusions reached by the commission in the Elmore case, and that we favored a more

liberal construction of the provisions of the Workmen's Compensation Act than that given to it by the commission at the time the Elmore case was before it.

Petitioner has called to our attention certain statements appearing on page 40 of our decision in the case of *Union Iron Works* v. *Industrial Acc. Com.*, 190 Cal. 33 [210 Pac. 410, 413], to the following effect: "It therefore follows that the medical and surgical services contemplated and called for by the statute in question should be such as will tend to secure the return of the workman to productive employment. In other words, and perhaps more precisely stated, the treatment required by the statute is such as will reasonably and seasonably tend to relieve and cure the injured employee from the effects of the injury, . . . " From this language petitioner draws the conclusion that the sole object and purpose of medical and surgical treatment as provided for in the act is to restore the injured workman to productive employment, and that when this object and purpose cannot be accomplished—and it is self-evident that it cannot in case the injury has become permanent—the injured workman is no longer entitled to have any further medical or surgical treatment furnished to him by his employer. A reading of the opinion in the case of *Union Iron Works* v. *Industrial Acc. Com., supra,* however, we think, makes it apparent that the court was not discussing medical treatment, provided by the statute, in its relation to an injury that had become permanent. In that case the injured employee became dissatisfied with the medical treatment furnished him by his employer for the reason that it was not curing his injury. He refused, therefore, to accept such treatment, and employed a physician and surgeon of his own choice, under whose treatment he was restored to health. The Industrial Accident Commission made an award in his favor for the services rendered by the privately employed physician and surgeon and the court affirmed the award. In so doing it held that as the commission had found that the medical treatment furnished by the employer was not such as would tend to secure the return of the employee to productive employment—that is, it did not tend to cure the injured employee—the latter was justified in his refusal to accept such treatment, and in securing treatment which would

cure his injury. In discussing the nature of the treatment to which the injured employee in that case was entitled, and who had not sustained a permanent injury, the court used the language relied upon by petitioner. This language has no application to the facts in the present proceeding, where the injury of the employee is concededly permanent in its nature.

Having disposed of the authorities relied upon by petitioner to sustain its contention that under the statute an employee whose injuries are permanent is not entitled to any medical, hospital or surgical treatment, we will now turn to the statute itself in an endeavor to ascertain its meaning. As before noted, section 9a of the act provides that the employer shall furnish to his injured employee such medical treatment, including nursing, as may reasonably be required to cure and relieve from the effects of the injury. To hold that an employee who has sustained permanent injuries is not entitled to medical treatment for the reason that his condition is beyond cure would be to eliminate entirely the word "relieve" from the above section of the act. It must be presumed that the legislature had some purpose in mind in the use of the word "relieve" as it is found in the act, and it is the duty of the courts, so far as they are able, in construing said act to give effect to this word, as well as to all other words and provisions of said act. By section 69 of said act it is provided that whenever any part or section of said act is interpreted by the court "it shall be liberally construed by such court with the purpose of extending the benefits of the act for the protection of persons injured in the course of their employment." If we should follow the ordinary rules of construction applicable to the interpretation of statutes in determining the meaning of section 9a of said act providing that the employer furnish such medical treatment "as may reasonably be required to cure and relieve from the effects of the injury" we would hesitate to hold that "cure and relieve" meant simply to cure, and that an employee permanently injured was not entitled to medical treatment for the reason that his injury was beyond cure, if such treatment would tend to relieve said injury. We would find it difficult to conclude that the legislature did not intend to provide medical treatment for the relief as

well as for the cure of his injuries, and that in the case where the injury was permanent and could not, therefore, be cured, it was not intended that the injured employee should be furnished with such medical treatment as might be required to relieve him from the effects of his injury. When, however, we seek to construe this section of the act in the light of the injunction found in section 69 thereof, we think that there can be no question as to our duty to give it that liberal construction which its phraseology clearly warrants, and which will result "in extending the benefits of the act for the protection" of the injured employee Hardy. This may necessitate holding that the words "cure and relieve" were intended to mean the same as "cure or relieve." In our opinion this is the only reasonable conclusion that can be reached when we consider the act as a whole and its objects and purposes. A similar conclusion was reached by the supreme court of Minnesota in the case of *Eberle* v. *Miller*, 170 Minn. 207 [212 N. W. 190]. The facts were substantially the same as those before us in the present proceeding. The statute of that state upon the subject was practically identical with the Compensation Act of our own state. On page 191 of the opinion (170 Minn. 209), the court said: "The controlling issue here under consideration is whether an employee who has sustained accidental injury in the course of his employment, resulting in total permanent disability, is entitled to further medical and hospital treatment when all has been done that can be done to cure or improve his condition resulting from such injury. . . . We think the words *cure* and *relieve* were intended to mean the same as *cure* or *relieve* and should be so construed." As before stated, we think this to be the reasonable construction to be given to our own statute. Under such a construction the injured employee, although permanently injured, would be entitled to such medical and hospital treatment as may be reasonably required to relieve him from the effects of his injury.

It is further contended by the petitioner that the award of the department is void for uncertainty in that it cannot be ascertained therefrom what was the reasonable value of the medical services to be rendered, nor the amount to be awarded nor the persons to whom the awards were made. Petitioner relies upon the case of *Garratt-*

*Callahan Co.* v. *Industrial Acc. Com.,* 171 Cal. 334 [153 Pac. 239]. By comparing the award involved in that action with that in the present action, it will readily be observed that they differ in many essential features. In fact, they are entirely different. The award in the present proceeding as to medical treatment is a clear and direct command to the petitioner "to furnish to employee the medical, surgical and hospital treatment, including nursing, as may be reasonably required to cure and relieve him from the effects of said injury." There is nothing uncertain as to the meaning of this order. The petitioner in explicit language is directed to furnish the injured employee certain treatment which is aptly described in the order of award. There is no mistaking its terms. The petitioner will, we anticipate, find no difficulty in complying with the requirements of the award in so far as understanding just what said requirements consist of. ■ Petitioner contends, however, that upon its refusal to furnish said treatment the department is powerless to make any further order in said matter as more than 245 weeks have elapsed since the employee was injured. There is some doubt as to whether this question is properly before us at this time. Just what the department may do in case petitioner refuses to comply with said award must be determined in the future. In the Blankenhorn case, upon the refusal of the insurance carrier to furnish the treatment provided for in the award, the commission, after the lapse of 245 weeks after the date of the injury to the employee, held a hearing and determined the amount that had been expended for the purpose of securing adequate treatment for the injured employee and ordered said insurance carrier to pay the same. We denied a petition to annul said order. Notwithstanding the uncertainty as to whether the question of the effect of such an order, made more than 245 weeks after the date of the injury, is not involved in the present proceeding, the parties hereto have presented argument upon the same to all intents and purposes as if it were properly before us. This has been done no doubt for the reason that, if the department is without power to make any further order in this matter or to take any action in enforcing its award of July 10, 1928, then said award is a nullity and its direction to petitioner to furnish said treat-

ment is but an idle gesture. We, therefore, think that it is but proper that we should give this question some consideration and answer it for the future guidance of the parties hereto.

We have decided that the award in this case which provided for medical treatment for said injured employee beyond the 240 weeks' period is valid and is sanctioned by the terms of the Workmen's Compensation Act. Section 20 (d) of said act provides "that no award of compensation shall be rescinded, altered or amended after two hundred forty-five weeks from the date of the injury." "Compensation" as used in the Workmen's Compensation Act is a comprehensive term and includes not only liability payments provided for in section 9 (b) of said act, but also medical treatment provided for in section 9 (a), as well as death benefits provided for in section 9 (c). (See secs. 1 and 9.) Would an order of the department (in case petitioner refuses to furnish medical treatment to the injured employee, and in case said treatment shall be furnished by a third person as was done in the Blankenhorn case) directing that petitioner pay to said third person the amount expended for such treatment be either a rescission, an alteration or amendment of the award of compensation, and, therefore, in violation of section 20 (d) of said act? We think not. Whatever future orders the department may be required to make in order to enforce said award will not in any way change or alter the terms thereof. The award itself will stand as made by the department. The orders, in case the department may hereafter find it necessary to promulgate any, will simply fix and determine the cost of the treatment furnished under said award to the injured employee from time to time, and for which the petitioner has refused to pay. On the other hand, if the award is complied with, no further action on the part of the department will be necessary, and no future orders will be required of it in order to enforce the award. We think this can be done without in any way violating the provisions of section 20 (d) of the act. That the department has the authority to take any and all necessary steps to make effective the award made by it we think was foreshown by the enactment of section 63 (a) of said act, which reads as follows: "The commission is hereby

vested with full power, authority and jurisdiction to do and perform any and all things, whether herein specifically designated, or in addition thereto, which are necessary or convenient in the exercise of any power, authority or jurisdiction conferred upon it under this act.''

It would be idle to give the department authority to make an award for the medical treatment required to relieve an injured employee suffering from a permanent injury, which treatment would in many cases be required long after the expiration of the 245 weeks' period, without vesting in the department the power to enforce such award. If there were any doubt that this authority was possessed by the department from the general terms of the act authorizing it to make such an award, we think this doubt is entirely dispelled by the enactment of said section 63 (a) above quoted. Our conclusion is, therefore, that the department had the power and jurisdiction to make the award of July 10, 1928; that the department has the further authority and power to enforce said award by appropriate orders, to be made hereafter, as it may find necessary in order to provide the injured employee the relief to which he is entitled by virtue of the terms of said award, and that the granting of such necessary orders will not in any way alter, amend or rescind, or otherwise affect said original award.

The writ is denied and the award is affirmed.

Seawell, J., Shenk, J., Waste, C. J., Langdon, J., Preston, J., and Richards, J., concurred.